[Civil No. 3800.   Filed January 11, 1937.]

[63 Pac. (2d) 998.]

FRED L. INGRAHAM and INEZ L. INGRAHAM, Husband and Wife, Appellants, v. MARCEL FORMAN, SAM DE CORSE and GEORGE HAGELY, Constituting the Board of Supervisors of the County of Yuma, in the State of Arizona, Appellees.

Mr. Fred L. Ingraham and Mr. Mercer Hemperley, for Appellants.

Mr. Glenn Copple, County Attorney, and Mr. A. J. Eddy, Deputy County Attorney, for Appellees.

ROSS, J.—Fred L. Ingraham and Inez L. Ingraham, his wife, were assessed with three separate pieces of real property located in Yuma county by the officers of such county, and, the taxes thereon becoming delinquent, the state, in due course, brought an action to foreclose its tax lien. Judgment was entered in favor of the state for taxes, costs, and penalties on June 19, 1928, and the property ordered sold under execution and the proceeds applied to the satisfaction of the judgment. Thereafter, on May 26, 1933, execution was issued, returnable in sixty days, and placed in the hands of the sheriff of Yuma county. This officer, after notice, on June 24, 1933, sold all of the property to the state of Arizona in satisfaction of the judgment, penalties, and costs. The Ingrahams failing to redeem, sheriff's deed was executed and delivered to the state.

Sections 3133 and 3134 of the Revised Code of 1928 make it the duty of the boards of supervisors to advertise and sell lands acquired by the state in their respective counties through tax foreclosures and sales. The Board of Supervisors of Yuma County, in pursuance of such statute, was advertising the Ingraham property for sale on June 15, 1935. On June 12, 1935, the Ingrahams commenced this action against the members of said board for injunctive relief, contending that at the time the sale of the premises was made the judgment for taxes was dormant and that, therefore, the sale was void. Defendants filed a general demurrer to the complaint, which was sustained, and, the plaintiffs not asking for leave to amend, judgment was rendered dismissing their complaint. Plaintiffs have appealed from such judgment.

■ It is the contention of the plaintiffs that the law not only requires that the execution issue within five years after entry of the judgment, but that the sale of property thereunder be also within the five years. This contention is based on the provisions of section 4210, Id., reading: "The party in whose favor a judgment is given may, at any time within five years after entry thereof, have a writ of execution issued for its enforcement. No execution shall be issued upon a judgment after the expiration of five years from the date of its entry, unless such judgment be revived by affidavit, or an action be brought thereon, within five years from the date of such rendition and entry." If this statute applies, plaintiffs' contention is, according to a majority of the cases, right because, although it appears that the execution was issued before the expiration of five years and before the judgment became dormant, the property was not sold until after the five years had run (six days) and at a time when the judgment was dormant.

It is also contended that the statutory five-year judgment lien given a judgment creditor from the date of the rendition and entry of the judgment (section 2017, Id.) "upon all the real property of the judgment debtor" does not extend the life of the judgment lien or the time within which the sale of property under execution must be made. Where the lien is not on any specific property but is on all the real property of the judgment debtor, it seems that a majority of the courts agree that the lien dies with the judgment and that a sale, if made after the period of limitation has run against the judgment lien, although the execution was issued prior thereto, is void. Freeman on Judgments, fifth edition, volume 2, section 1015, makes this statement:

"In many instances, executions have been taken out and levies made within the time prescribed for the

continuance of the lien, but so late that the sale did not take place until after the lapse of such time. In regard to such cases, so far as our observation has extended, it has, except in the state of Missouri, been uniformly held that the execution and levy did not continue the lien; and that to preserve the priority acquired by the judgment, the sale must be made during the statutory period. The title acquired at such a sale is therefore precisely the same as though the judgment had never been regarded as a lien.''

We do not believe, however, that this rule governs the present case. The reason given by the courts, for requiring the levy and sale under execution to be effected before the judgment is barred, is that an execution is the mere means for collecting the judgment or enforcing the judgment lien. It does not create a lien or extend it. It rests on the judgment and, if the judgment and the lien of the judgment are extinguished by the period of limitation, the proceeding by execution is likewise extinguished.

Tax liens are creatures of the statute. 61 C. J. 912, § 1155. There is no such thing as a lien for taxes at the common law. The legislature has plenary power over the subject of taxation and may provide for tax liens and fix the terms upon which such liens may be extinguished, and when that is done the legislative rule is binding and must be given effect. While it is provided that the state's tax lien shall be foreclosed by action, and that ''execution shall issue and judicial sale [be] had as in an action for the foreclosure of mortgages'' (section 3123), the judgment does not supersede or displace the tax lien created by the legislature. Nor do we think that the provision in section 3125, Id., providing that ''execution shall issue thereon, and be executed, as in other cases, and the judgment shall be a first lien upon said real estate,'' has the effect of canceling the tax lien, especially when construed, as it should be, with section

3101, Id., as amended by chapters 21 and 106, Laws of 1931, reading:

"Every tax levied under the authority of this chapter [Ch. 75, R. C. 1928] upon real or personal property shall be a lien upon the property assessed. The lien shall attach on the first Monday in January in each year and shall not be satisfied or removed until such taxes, penalties, charges and interest are all paid, or the property has finally vested in a purchaser under a sale for taxes."

Under this section the only ways to satisfy or remove the tax lien are to pay the taxes, penalties, charges, and interest, or through a valid tax sale which results in investing title in a purchaser. This is what the legislature has said and in doing so it was exercising a power rightfully belonging to it. The lien is not merged in the judgment but persists until one or the other events named in section 3101, *supra,* happens.

It is said in 61 Corpus Juris, 944, § 1213:

"Generally speaking, a lien for taxes regularly levied on land can be discharged or extinguished only by payment or in some manner recognized or authorized by statute. Under some statutes, a tax lien can be extinguished only by payment or sale of the property."

Plaintiffs make the point that this court in *Gila Land & Cattle Co.* v. *Eads,* 23 Ariz. 282, 203 Pac. 549, held that the general statutes of limitation against judgments applied to tax sales. In that case the execution was not issued for seven years after the rendition of the judgment. The statutes at that time were not in all respects the same as they are now and were when the tax proceedings herein were taken. At all events, upon a consideration of the law and the facts we have arrived at the conclusion that anything in

that opinion contrary to what we have herein stated to be the law should be overruled.

We are satisfied that the scheme provided by the legislature for the assessment and collection of taxes contemplates that the tax lien shall persist until the tax is paid or the property sold, and, that being our conclusion, we think the trial court was correct in sustaining the demurrer to plaintiffs' complaint and in dismissing the action.

The judgment is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.