**EASON et al. v. DAVID et ux.**

No. 4662.

Court of Civil Appeals of Texas. Beaumont.
May 31, 1950.

Rehearing Denied June 29, 1950.

Second Motion for Rehearing Overruled
Sept. 13, 1950.

428

O'Fiel & O'Fiel, Beaumont, for appellants.

Adams, Browne & Sample, and Ernest J. Browne, Beaumont, for appellees.

WALKER, Justice.

Appeal from an order granting a temporary injunction.

Appellees J. W. David and wife were the plaintiffs, and the appellants Eason and O'Fiel were two of the three defendants in the trial court. The third defendant was Reagan Baker, a constable of Jefferson County.

Plaintiffs brought the suit to remove a cloud from the title to land and for injunctive relief, temporary as well as permanent. The subject matter of the litigation is certain real property in the City of Beaumont, to wit, Lots 8, 9 and 10 in Block 1 of the Hackett Addition to said city. Plaintiffs alleged that they were the owners of, and were in possession of, this property and that defendants Eason and O'Fiel had caused a writ of possession to be issued under a judgment of the District Court of Jefferson County in Cause No. 24120, styled The City of Beaumont v. J. W. David, and that said defendants had delivered said writ to the defendant Baker, a constable of Jefferson County, for execution. Plaintiffs alleged further that said defendants threatened to execute this writ and to dispossess them of the property aforesaid. Plaintiffs alleged generally that they had title in fee simple to the property and also plead specially that they had title to said property by adverse possession under the three and ten year statutes of limitation. Plaintiffs' charged that the writ of possession was wrongfully issued because it required delivery of possession to the City of Beaumont but had been procured without the City's consent and further, that the City claimed no interest in the property and was not seeking to dispossess plaintiffs. The plaintiffs also alleged, in effect, that the judgment under which the writ had been

issued was dormant under Article 3773, R.S.1925, Vernon's Ann.Civ.St. art. 3773, and was barred by Article 5532, R.S.1925. Plaintiffs prayed judgment for title and for injunctive relief.

The trial court passed a restraining order and set the prayer for temporary injunction down for hearing.

Pending this hearing, defendants Eason and O'Fiel answered, pleading among other matters that they had title to the property. They alleged that the judgment mentioned in the petition was a tax judgment in behalf of the City of Beaumont against the present plaintiffs, and that by virtue of a foreclosure sale under said judgment, the City of Beaumont became the owner of the property claimed by plaintiffs; and said defendants alleged further that they had acquired the City's title. Said defendants prayed judgment for title and possession. and for rents.

The constable also answered. Among other matters, he alleged that the writ of possession in his hands was returnable within 90 days and that this period had expired. It is not disputed that this writ was never executed.

Plaintiffs' prayer for temporary injunction came on for hearing, and was granted. The order in effect restrains defendants from executing any writ of possession issued under the judgment referred to in the pleadings and from interfering in any way with plaintiffs' possession. From this judgment defendants Eason and O'Fiel have appealed.

The proof made in the trial court raised only issues of law except, perhaps, in one particular hereinafter mentioned. Plaintiffs were the common source of the titles exhibited to the trial court.

The property in suit was conveyed to the plaintiffs by one James H. Block by a deed dated January 6, 1922; and since that time (or at least since 1922) the plaintiffs have resided and have made their home upon said property, holding said property all this while in actual, adverse, exclusive and uninterrupted possession, claiming to be the owners thereof. Plaintiffs' deed from Block was filed for record on February 6, 1922

and was recorded on February 11, 1922. These facts, with some testimony from Mrs. David that the constable had made some attempt to dispossess plaintiffs, constituted the proof made by plaintiffs.

In reply, defendants Eason and O'Fiel tendered evidence of title in themselves, as alleged by them. They first proved Block's deed to plaintiffs and then adduced the following documents as evidence of their title:

(1) Tax foreclosure judgment of the District Court of Jefferson County, dated January 23, 1936, rendered in Cause No. 24120, styled The City of Beaumont v. Joseph William David and Susie David. The defendants named are the present plaintiffs. This judgment awarded the City a recovery from the present plaintiffs, in personam and not in rem, of the taxes levied by said City for the years 1924 to 1934, inclusive, upon the property in suit, and foreclosed the tax liens securing the payment of said taxes, directed the issuance of an order of sale, and provided that "in the event the right of redemption is not exercised within two years from date of sale, the clerk * * * shall issue a writ of possession to the purchaser."

(2) Order of sale dated April 15, 1936, issued under the aforesaid judgment.

(3) Sheriff's return upon said order of sale. This return recites, in substance, that the property now in suit was sold on June 2, 1936, to the City of Beaumont for the amount of the judgment and costs accrued.

(4) Sheriff's deed dated July 10, 1936, conveying the property now in suit to the City of Beaumont, pursuant to the sale of June 2nd.

(5) Judgment of the District Court of Jefferson County dated June 15, 1949, (Some 13 years after the tax sale) rendered in Cause No. 251905 in behalf of Winston Eason against the City of Beaumont, awarding the said Eason the title and right to possession of the property now in suit.

(6) A quitclaim deed dated June 15, 1948, from the South Park Independent School District to Winston Eason, conveying the District's interest in the property in suit.

It was not proved that the District ever had any interest in the property, and under the proof this deed was irrelevant to the issues made in the trial court.

(7) General warranty deed from Winston Eason to David E. O'Fiel dated June 15, 1949, conveying an undivided one-half interest in the property in suit.

(8) Entries in the Civil Fee Book, Tax Suits of the District Clerk of Jefferson County. These entries showed that on March 3, 1947, and on June 14, 1948, and on June 19, 1949, writs of possession were issued out of the said clerk's office under the tax judgment.

The writ of March 13, 1947 was put in evidence at the trial court's instance. Upon the place prepared for the officer's return was written in pencil: "Returned request of Atty for plaintiff". No signature was appended, and the form of the officer's return was not filled in. The writ of June 4, 1948, had never been returned to the clerk and could not be found, and there is no evidence concerning it other than the fee book entry listed above. The writ of June 10, 1949, remained in the hands of the constable. This writ was not executed. It was in the constable's possession at the time of the hearing, and according to the constable's answer, had expired by lapse of time.

The foregoing statement exhibits the proof made by defendants.

There was no proof that plaintiffs had exercised the right of redemption under the tax judgment. Instead, plaintiff J. W. David testified that as well as he could remember, he had not paid any taxes on the property since "in 1936", and that "I just didn't have the money to pay it". We construe this testimony as showing that plaintiffs did not exercise their right of redemption.

No proof was made that defendants had attempted any dispossession of plaintiffs, or any interference with plaintiffs' possession, except under and by virtue of the writ of possession of June 19, 1949, referred to above; and no proof was made that defendants intended any interference with plaintiffs' possession other than by authority of judicial process.

## Conclusions of Law.

The material arguments of the parties are adjudicated by the following comments:

■ (1) To the extent that the evidence raised questions of law as distinguished from questions of fact, the trial court's grant of the temporary injunction did not involve an exercise of discretion, and to this extent, at least, must be reviewed on this appeal. Southland Life Ins. Co., v. Egan, 126 Tex. 160, 86 S.W.2d 722.

(2) We assume (without deciding) that defendants Eason and O'Fiel had the same right as did the City of Beaumont to procure process under the tax judgment, since the existence of such a right has not been questioned, if said defendants own the City's title.

■ (3) The proof shows neither title nor any right to possession vested in the plaintiffs; and on this phase of the hearing the plaintiffs showed no "probable right" nor any "substantial controversy". The plaintiffs' proof of title was completely rebutted by the defendants Eason and O'Fiel. These defendants proved an apparently valid foreclosure and sale of the property to the City of Beaumont which became absolute at the end of the two year redemption period, and that they had acquired this title from the City. On this proof, said defendants were entitled to possession and the plaintiffs' possession was wrongful. The plaintiffs apparently relied upon their adverse possession to defeat defendants' proof of title; but the statute of limitation under which plaintiffs claimed title, namely, Article 5510, R.S.1925, did not run against the City of Beaumont. Concerning Article 5507, the other statute under which plaintiffs alleged title, see: Burton's Heirs v. Carroll, 96 Tex. 320, 72 S.W. 581. The City bought the property at a sale under a tax judgment in its favor and must be taken to have held its title for resale, since there is no evidence that it ever made any attempt to do anything with the property except, of course, to the extent of procuring the issuance of one

or more writs of possession. While the City owned it, this property represented and stood in the place of the various taxes for which the tax judgment was rendered; and upon the sale of the property, the proceeds thereof would have been payable into the several tax accounts into which the taxes listed in the judgment ought to have been paid. City of Sherman v. Williams, 84 Tex. 421, 19 S.W. 606, 31 Am.St.Rep. 66; State v. City of Houston, Tex.Civ. App., 140 S.W.2d 277; Gordon v. Thorp, Tex.Civ.App., 53 S.W. 357. Taxation is a governmental function. City of San Angelo v. Deutsch, 126 Tex. 532, 91 S.W.2d 308. For these reasons, this property, bought as it was by the City and "held" for resale as it evidently was, constituted property held by the City for a public purpose within the meaning of Article 11, Sec. 9 of the Constitution, Vernon's Ann.St.; and said property was therefore exempt from taxation and from forced sale. City of Austin v. Shepherd, 144 Tex. 291, 190 S.W.2d 486, 162 A.L.R. 1116; State v. Moak, 146 Tex. 322, 207 S.W.2d 894; State v. City of San Antonio, 147 Tex. 1, 209 S.W.2d 756; Gordon v. Thorp, Tex.Civ. App., 53 S.W. 257; Lubbock Ind. School District v. Owens, Tex.Civ.App., 217 S.W. 2d 186. The status of this property differed somewhat from the status of property bought by the City out of tax funds; for a sale of this property would have been only a step taken in the collection of the taxes listed in the tax judgment. Now, limitation did not run against the City's right to collect the taxes listed in the tax judgment. Articles 7298 and 7329, R.S. 1925, Vernon's Ann.Civ.St. arts. 7298, 7329; Sam Bassett Lbr. Co. v. City of Houston, 145 Tex. 492, 198 S.W.2d 879; City of Beaumont v. Fall, 116 Tex. 314, 291 S.W. 202. Payment of these taxes was secured by liens upon the property until the taxes were paid or the liens were discharged as an incident of a sale under the tax judgment. Article 7320, R.S.1925; City of San Angelo v. Deutsch, 126 Tex. 532, 91 S.W.2d 308. Doubtless the City's tax liens which were foreclosed in the tax judgment would ordinarily be treated as having merged in the City's title to the prop-

erty after that title became absolute. State v. Moak, 146 Tex. 322, 207 S.W.2d 894; State Mortgage Corporation v. State, Tex. Com.App., 17 S.W.2d 801; Lubbock Ind. Sch. Dist. v. Owens, Tex.Civ.App., 217 S.W.2d 186. But such an application of the doctrine of merger ought not to be given the effect of making the property subject to the operation of Article 5510. It seems anomalous that liability for the taxes and the lien securing this liability should be excepted from the statutes of limitation while the property into which the taxes were converted and out of which the taxes were to be collected and paid into the City's treasury should not be excepted from those statutes—no broader in terms than the statutes governing personal actions—which regulate the matter of adverse possession. We assume that in the absence of a statutory exception the statutes concerning adverse possession would apply to the City's title to the property in suit, and that plaintiffs' proof of adverse possession would show that plaintiffs had acquired the City's title under and by virtue of Articles 5510 and 5513, R.S.1925. Mellinger v. City of Houston, 68 Tex. 36, 37, 3 S.W. 249. The only statute found by us which purports, in terms, to except a city's property from the operation of the statutes concerning adverse possession is Article 5517, R.S.1925, Vernon's Ann.Civ.St. art. 5517, and we have some doubt that this statute applied to the property while the City owned it. But regardless of whether Article 5517 applied on not, we think that the statutes excepting the City's taxes from the operation of the statutes of limitation express an intention that the City's power to collect the taxes is not to be defeated by any such statute, and that in order to effectuate this intention and preserve the City's power to collect taxes, the property bought by the City at the sale under the tax judgment and subsequently held by the City for resale in order to collect the taxes which this property represented must be excepted from the operation of Article 5510, under which plaintiffs claim title to the land.

■ (4) Nevertheless, the temporary injunction was justified insofar as it re-

432

strained the execution of writs of possession issued under the tax judgment, because the trial court was authorized to conclude that a trial of the merits would show that the provisions of the tax judgment directing the issuance of such writs became dormant under Article 3773.

Article 3773 must be held applicable to that provision of the tax judgment. This statute provides in general terms that if no execution is issued within 10 years after the rendition of *a judgment in any court of record, the judgment* shall become dormant and no execution shall issue thereon unless *such judgment* be *revived.* It is next provided that if execution does not issue within the next 10 years, the judgment shall not become dormant unless 10 years shall have elapsed between the issuance of executions thereon.

The very general terms which we have underlined necessarily include tax judgments unless there is some provision of law which expressly or impliedly excepts tax judgments from said statute, and we have found no such exception. See Mellinger v. City of Houston, supra, applying the statutes of limitation to taxes not excepted therefrom by statute. Article 3773 evidently applies only to judgments which can be *revived;* but the tax judgment rendered against plaintiffs establishes plaintiffs'. personal liability for the taxes listed in said judgment, and declares liens to secure the payment of the debt; and it seems to us that such a judgment would be as apt and proper a subject of revivor proceedings as is a judgment foreclosing a contract lien. It is conceivable that a defense might exist in bar of the revivor proceedings; and the same reasons impelling the enactment of Article 3773 concerning judgments which foreclose contract liens also seem applicable to the tax judgment rendered against plaintiffs. The writ of possession awarded in the tax judgment was essential to complete enforcement of said judgment, and the issuance and execution of such writ would have been as much a part of the enforcement of · said judgment as was the order of sale actually. issued. We accordingly think that the word *execution* in Article 3773 should be construed as including said writ of possession. See Young v. City of Colorado, Tex. Civ.App., 174 S.W. 986, pg. 994 (Hn. 10). The term has been construed as including an order of sale. Carlton v. Hoff, Tex.Civ. App., 292 S.W. 642. And Rule 631, Vernon's Texas Rules Civil Procedure refers to an order of sale as an execution. Revivor proceedings have been had under a decree fixing title to and partitioning land. Teel v. Brown, Tex.Civ.App., 185 S.W. 319. And Rule 632 refers to a writ of possession as an execution.

Since Article 3773 applied to that provision of the tax judgment directing the issuance of a writ of possession, this provision apparently had become dormant under said statute because the earliest writ of possession prepared by the clerk for issuance under the tax judgment was dated March 13, 1947, which was well in excess of 10 years subsequent to the date of the sheriff's deed to the City of Beaumont. If it be thought that the two year redemption period during which the City was not entitled to possession extended the period during which the writ of possession could have been issued under the tax judgment, then it must be said that the trial court had some basis in the proof for concluding that on a trial of the merits, plaintiffs probably would be able to show that the writ dated March 13, 1947, was not *issued* within the meaning of Article 3773. General American Life Ins. Co. v. Ramp, 135 Tex. 84, 138 S.W.2d 531, pg. 92; Harrison v. Orr, Tex.Com.App., 296 S.W. 871, pg. 875. Only at this point does any possible fact issue arise on the proof, and if the sugested issue was material, the trial court could adjudge it in plaintiffs' behalf and must be taken to have done so. The next writ of possession was dated June 14, 1948, which was more than 12 years subsequent to the date when the sheriff sold. the property to the City of Beaumont under the order of. sale.

We are not to be understood as holding that Article 5532, R.S.1925 (which plaintiffs also alleged in bar of dispossession) barred enforcement or revivor of the tax judgment. Obviously it did not, because of the statutes exempting the tax

liens of the City of Beaumont from the operation of the statutes of limitation and because of our holding that Article 5510 did not run against the City's title. Ingraham v. Forman, 49 Ariz. 29, 63 P.2d 998. This conclusion, however, does not affect our conclusions regarding the applicability of Article 3773, because Article 5532 has been construed as being independent of Article 3773. Zummo v. Cotham, 137 Tex. 517, 155 S.W.2d 600. There is no inconsistency in our construction of these two statutes, since our interpretation of Article 3773 does not affect the existence of the City's tax lien nor the ultimate enforcibility of the tax judgment, pursuant either to scire facias or to appropriate suit.

Nor are we to be understood as holding that any provision of the tax judgment became dormant under Article 3773 other than the provision which authorized the issuance of a writ of possession. See: Henderson v. Chesley, Tex.Civ.App., 229 S.W. 573.

(5) The temporary injunction was properly granted insofar as it restrains execution of writs of possession under the tax judgment, and to this extent it should be affirmed. Otherwise, it must be set aside and dissolved.

It is so ordered.

### On Motion for Rehearing.

Plaintiffs' motion for rehearing has been considered and the same is overruled.

■ Regarding the exceptions to the answer of defendants Eason and O'Fiel which the trial court did not consider, it appears either that the trial court's action was proper or that no harm could have resulted to plaintiffs from that action. See Rule 385(d), Vernon's Texas Rules Civil Procedure; City of Wichita Falls v. Whitney, Tex.Civ.App., 11 S.W.2d 404; Head v. Commissioners' Court of Hutchinson County, Tex.Civ.App., 14 S.W.2d 86.

■ The certified copies of the City's tax judgment against plaintiffs and of the order of sale issued under this judgment, and of the sheriff's return on said order of sale, and the certified copy of defendant Eason's judgment against the City were admissible under art. 3720, R.S.1925, independently of the requirements of art. 3726, R.S. 1925, Vernon's Ann.Civ.St. art. 3726, which was not applicable to these documents. Art. 3726 may have applied to the sheriff's deed to the City, but if it did, this deed was not necessary to show passage of title from the plaintiffs to the City. See Tarter v. Frazier, Tex.Civ.App., 159 S.W.2d 168, pg. 171 (Hn. 4, 5). We note too that this sheriff's deed was filed among the papers of this cause on September 19, 1949, while the hearing at which the temporary injunction was granted began on October 8, 1949. Article 3726 could not have applied to the deed from defendant Eason to defendant O'Fiel since the document was the original conveyance.

■ Defendants' proof of title was necessarily as relevant and material as was plaintiffs' proof of title, since it replied to and rebutted plaintiffs' proof.

It may be that we went beyond the evidence in saying that the City "must be taken to have held its title for resale, since there is no evidence that it ever made any attempt to do anything with the property." However, if we erred, the error seems immaterial since the land unquestionably did take the place of the City's taxes and did represent those taxes in concrete form, and there is nothing to show that the City ever intended to make any other specific use of the property which would be inconsistent with the City's ultimate collection of its taxes and the payment of those taxes into the particular funds for which the respective levies were made. It was certainly the duty of the City's officers to collect those taxes, and we ought not to assume that they would not, or that they would make some use of the property inconsistent with the objects for which those taxes were levied. Under City of Sherman v. Wright, 84 Tex. 421, 19 S.W. 606, 31 Am.St.Rep. 66, and Gordon v. Thorp, Tex.Civ.App., 53 S.W. 357, among other decisions cited in our original opinion, the land was certainly held for public purposes by the City within the meaning of art. 11, Sec. 9, of the Texas Constitution.

We are not to be understood as having expressed any opinion as to how the City

should have dealt with money received by them from a sale of the land in excess of the amount of the tax judgment.

Plaintiffs say concerning paragraph two of our Conclusions of Law that they did deny that defendants Eason and O'Fiel had the same right as did the City to procure process under the City's tax judgment against plaintiffs, if said defendants owned that judgment, and they refer us to their pleadings. We did not so construe their pleadings, but in deference to the construction which plaintiffs now place upon those pleadings, we withdraw that part of said paragraph two, which begins with the word *since*. The matter is immaterial under our holding respecting the dormancy of a part of the tax judgment.