

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

January 25, 1952

Hon. Dennis Zimmerman
County Attorney
Swisher County
Tulia, Texas

Dear Mr. Zimmerman:

Opinion No. V-1393.

Re: Effect on outstanding State
and County ad valorem taxes
of purchasing the land for
highway right-of-way for a
price less than the outstand-
ing taxes.

Your request for an opinion reads in part as follows:

"Swisher County is acquiring the right of way
needed to widen the State Highway passing through
the town of Kress, Texas.

"Some of these lots have back taxes unpaid both
to Kress School District and to State and County for
more than the value of the lot or the price that the
county should pay for the lots.

"In my opinion the amount paid the owner by the
county for any lot should be first applied pro rata to
the taxes due the State, county and school district."

Based on the above you have presented the following
two questions:

(1) How should the award or consideration paid for
right-of-way needed by the State for highway construction be ap-
plied to taxes due by the landowner when the property is acquired?

(2) If the award or consideration is not sufficient to
satisfy all the taxes, how should the deficit be treated?

In answering your questions no distinction will be
made between property acquired by private purchase or condem-
nation proceedings. In either event the answer is the same. The
State is primarily interested in acquiring a clear title to the prop-
erty free from all liens or claims, and this includes tax liens.
The consideration or award should therefore be first applied to
discharging these tax obligations of the landowner between all of
the taxing units to which taxes are owing upon a pro rata basis.
If the award or consideration is sufficient to satisfy all the taxes,

there remains no further problem. If it is not sufficient, the State is nevertheless protected in its title free and clear of any tax liens, as we shall proceed to point out.

Property acquired for highway right-of-way by the State is for a public purpose. 20 C.J. 559, Eminent Domain, Sec. 43. This brings us to a consideration of the lien for the taxes which attaches to each tract of land for the taxes assessed against it. Tex. Const. Art. VIII, Sec. 15; Art. 7172, V.C.S.; Richey v. Moor, 112 Tex. 493, 249 S.W. 172 (1923). We assume that the liens involved to secure the payment of the taxes, whether they be in favor of the State, county, municipality or school district, attach by virtue of valid assessments. In State v. Stovall, 76 S. W.2d 206 (Tex. Civ. App. 1934, error ref.), it was held that "when thereafter the legal title to such property is acquired by or vests in the state, and the same is used by it for a public purpose, all subsequent proceedings to collect such tax by enforcing such liens are without effect and void." State v. City of San Antonio, 147 Tex. 1, 209 S.W.2d 756 (1948), is to the same effect and it was there stated:

"Although the state and county did have a lien against the lot for taxes due them while the lot was privately owned by Barnes and others, the lien became unenforceable after the city and school district acquired title to it by the tax sale in 1938 and while they continue to hold it for public purposes; and the lot, while so held, was not subject to seizure and sale to satisfy a judgment for taxes levied by the state and county during the time it was so privately owned; and any proceeding attempting to accomplish that is void. State v. Stovall, Tex. Civ. App., 76 S.W.2d 206, error refused; Childress County v. State et al., 127 Tex. 343, 92 S.W.2d 1011; City of Marlin v. State, Tex. Civ. App., 205 S.W.2d 809."

So long, therefore, as the property is acquired for a public purpose, all prior tax liens for taxes accruing during the time it was privately owned are unenforceable. While the State is protected against enforcement of the tax liens which become fixed to secure the taxes accruing during the period of private owner- ship, this does not mean that the property owner is permitted to receive the consideration or award free from the claim of the tax- ing units for the taxes which have accrued against the private own- er. The fund arising from the consideration or the award is sub- ject to the payment and discharge of the taxes which the private owner owes or is liable for at the time of the acquisition of title by the State. This is, in effect, the holding of the court in State of Texas v. Moody's Estate, 156 F.2d 698 (C.C.A. 5th 1946), and is expressed in this language:

"We agree with the appellants:

"...

"(2) That ordinarily any valid lien on lands which existed at the time such lands were acquired by the United States should be satisfied out of the compensation paid to the owner for the taking of such lands."

The same rule has been announced by the courts in other jurisdictions. United States v. 412.715 Acres of Land in Contra Costa County, 60 F.Supp. 576 (N.D. Cal. 1945); United States v. Certain Parcels of Land in City of Baltimore, Md., 61 F.Supp. 164 (D.Md. 1945); United States v. 111,000 Acres of Land in Polk and Highland Counties, Fla., 155 F.2d 683 (C.C.A. 5th 1946); United States v. Alberts, 55 F.Supp. 217 (E.D. Wash. 1944).

In the Alberts case, supra, the court said:

"... Regardless of the statutory change, the lien had attached prior to the filing of the declaration of taking. [Under Federal law this is the date that the title vests in condemnation proceedings.] That being true, the award stands in the place of the property. ..."

It is therefore apparent from the authority of the foregoing cases that the insufficiency of the award or consideration to satisfy all the taxes does not have the effect of leaving the property charged with the lien for the balance. The lien for all of the unpaid portion of the taxes becomes merged with the State's title and this precludes any further proceedings to collect the taxes by the enforcement of the lien. We think, however, that the owner or owners of the land against whom the taxes were assessed would be personally liable for any unpaid taxes lawfully assessed, and that it would be proper for the assessment rolls to continue to show this personal liability against the owner or owners.

## SUMMARY

Taxes on property acquired by the State either by condemnation or purchase due by the owner at the time of acquiring the title should be prorated between the taxing units to which taxes are owing upon a pro rata basis from the consideration or award. If the consideration or award be not sufficient to satisfy the taxes, the State nevertheless acquired the property

free from tax liens. The lien to secure the unpaid portion of the taxes becomes merged with the title of the State and the State's title is free and clear of any tax liens. Liability for the unpaid portion of taxes continues, however, as a personal obligation of the owner or owners against whom the taxes were assessed and should be continued on the tax rolls until the owner pays the same.

Yours very truly,

PRICE DANIEL
Attorney General

By *L. P. Lollar*

L. P. Lollar
Assistant

APPROVED:

W. V. Geppert
Taxation Division

E. Jacobson
Reviewing Assistant

Charles D. Mathews
First Assistant

LPL/mwb